UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| DENNIS CAIN, | ) Civil Action No.: 4:11-cv-2878-RBH-TER |
| Plaintiff, | ) |
| -vs- | ) |
| | ) **REPORT AND RECOMMENDATION** |
| SOUTH CAROLINA CENTRAL RAILROAD COMPANY, LLC. and RAIL AMERICA; | ) |
| Defendants. | ) |

## I. INTRODUCTION

In this action, Plaintiff brings claims of discrimination and retaliation in violation of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101, et seq.[1] Presently before the Court is Defendants' Motion to Dismiss, or in the alternative, Motion for Summary Judgment (Document # 7). All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(g), DSC. Because this is a dispositive motion, this Report and Recommendation is entered for review by the district judge.

## II. RELEVANT FACTS AND FACTUAL ALLEGATIONS

Plaintiff alleges in his Amended Complaint that he suffered from a spinal condition resulting in a disc bulge and that he was "taken out of work" in August 2009 and placed on medical leave. Amended Complaint ¶¶ 14-16. Plaintiff subsequently "was released to return to work" but "Defendant refused to return the Plaintiff to work." Amended Complaint ¶¶ 17-18. Plaintiff alleges "Defendant failed and refused to return the Plaintiff to work contending that Plaintiff ha[d] certain

---

[1] Plaintiff's Amended Complaint also contains a third cause of action for "mental and emotional distress." However, in his Response, Plaintiff asserts that this is a request for damages and not a separate cause of action.

restrictions" when in fact Plaintiff "did not have any restrictions from his physicians." Amended Complaint ¶¶ 19-20. Plaintiff alleges his employment was terminated on October 18, 2010, which was the date the grievance process regarding his termination was final. Amended Complaint ¶¶ 23-26. Plaintiff alleges that Defendants' reasons for his termination were pretexual because Defendants perceived plaintiff as disabled. Amended Complaint ¶¶ 21, 27. Plaintiff alleges that he was able to perform the essential functions of his position "with or without accommodation." Amended Complaint ¶ 22. Plaintiff also alleges "that the Defendant retaliated against the Plaintiff for his complaints regarding discrimination by not bringing him back during the Grievance process." Amended Complaint ¶ 60.

Defendants[2] submit the Declaration of Don Seil, Acting General Manager for Defendant South Carolina Central Railroad Company, LLC (SCRF), who states that, in August 2009, Plaintiff sought and received an indefinite period of unpaid non-FMLA medical leave for an off-duty injury/illness. Seil Decl. ¶ 5. In November 2009, Plaintiff filed for and received short term disability benefits retroactive to August 22, 2009. Seil Decl. ¶ 5. SCRF policy allowed Plaintiff up to six months of short term disability leave within a given twelve month period. Seil Decl. ¶ 6.

At the end of six months on short term disability leave, Seil asserts that Plaintiff failed to demonstrate that he was no longer under the medical restrictions imposed by his treating physician, and because of these restrictions he was no longer able to perform the essential functions of a train service employee. Seil Decl. ¶ 6. His employment was therefore terminated. Seil Decl. ¶ 6. Initially, plaintiff was informed by letter dated February 24, 2010, that his termination was effective as of that

---

[2]Plaintiff alleges that both South Carolina Central Railroad Company, LLC (SCRF) and Rail America were his employers. Defendants assert that RailAmerica is simply SCRF's parent company and was not Plaintiff's employer. Nevertheless for purposes of the Motion to Dismiss only, RailAmerica does not dispute Plaintiff's allegation that both entities were his employer.

date. Seil Decl. ¶ 6. Two days later, however, SCRF sent plaintiff a letter revising his termination date to February 26, 2010. Seil Decl. ¶ 6. Seil asserts that Plaintiff's termination was effective as of February 26, 2010, and was not contingent on resolution of a grievance process before becoming final. Seil Decl. ¶ 9.

Plaintiff, through his union, filed a grievance against SCRF, which resulted in a proceeding before Public Law Board 7368. Seil Decl. ¶ 8. Though the Board found that SCRF had not given Plaintiff the full fifteen-day grace period to which he was entitled under the Employee's Working Agreement between the railroad and the union, it found any error harmless because Plaintiff had failed to present credible evidence that he could return to work as a train service employee. Seil Decl. ¶ 8; The Board thus denied Plaintiff's request for reinstatement. Seil Decl. ¶¶ 8-9.

In Response to Defendant's Motion, Plaintiff submits his own Declaration, in which he states that, because he was a member of the union, there were certain procedures that must be followed in terminating his employment. Plaintiff Decl. ¶ 9. Specifically, he was required to go through a grievance process and he was still considered an employee during the grievance process. Plaintiff Decl. ¶ 10. Plaintiff was notified on October 18, 2010, that his employment was terminated. Plaintiff Decl. ¶ 12. He asserts he was informed by his Union that could not file a Charge of Discrimination with the EEOC or the South Carolina Human Affairs Commission prior to that date. Plaintiff Decl. ¶¶ 13, 23.

Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC) on March 8, 2011, and received a Right to Sue letter on June 25, 2011.

### III. STANDARDS OF REVIEW

#### A. Rule 12(b)(6)

A Rule 12(b)(6) motion examines whether Plaintiff has stated a claim upon which relief can

be granted. The United States Supreme Court has recently made clear that, under Rule 8 of the Federal Rules of Civil Procedure, a plaintiff in any civil action must do more than make mere conclusory statements to state a claim. See Ashcroft v. Iqbal, --- U.S. ----, ----, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Rather, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face. Iqbal, 129 S.Ct. at 1949; Twombly, 550 U.S. at 570. The reviewing court need only accept as true the complaint's factual allegations, not its legal conclusions. Iqbal, 129 S.Ct. at 1949; Twombly, 550 U.S. at 555.

Expounding on its decision in Twombly, the United States Supreme Court stated in Iqbal:

> [T]he pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation. A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement."
> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

Iqbal, 129 S.Ct. at 1949 (quoting Twombly, 550 U.S. at 555, 556, 557, 570) (citations omitted); see also Bass v. Dupont, 324 F.3d 761, 765 (4th Cir.2003).

**B.     Rule 56**

The moving party bears the burden of showing that summary judgment is proper. Summary judgment is proper if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Summary judgment is proper if the non-moving party fails to establish an essential element of any cause of action upon which the non-moving party has the burden of proof. Celotex, 477 U.S. 317.

Once the moving party has brought into question whether there is a genuine dispute for trial on a material element of the non-moving party's claims, the non-moving party bears the burden of coming forward with specific facts which show a genuine dispute for trial. Fed.R.Civ.P. 56(e); Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986). The non-moving party must come forward with enough evidence, beyond a mere scintilla, upon which the fact finder could reasonably find for it. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The facts and inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991). However, the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. Barber v. Hosp. Corp. of Am., 977 F.2d 872, 874-75 (4th Cir. 1992). The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." Mitchell v. Data General Corp., 12 F.3d 1310, 1316 (4th Cir. 1993).

To show that a genuine dispute of material fact exists, a party may not rest upon the mere allegations or denials of his pleadings. See Celotex, 477 U.S. at 324. Rather, the party must present evidence supporting his or her position by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed.R.Civ.P. 56(c)(1)(A); see also Cray Communications, Inc. v. Novatel Computer Systems, Inc., 33 F.3d 390 (4th Cir. 1994); Orsi v. Kickwood, 999 F.2d 86 (4th Cir. 1993); Local Rules 7.04, 7.05, D.S.C.

## IV. DISCUSSION

### A. Motion to Dismiss

Defendants argue that Plaintiff fails to state a claim upon which relief may be granted. To state a claim for discrimination under the ADA, a plaintiff must allege that (1) he was a "qualified

individual with a disability"; (2) he was discharged; (3) he was fulfilling his employer's legitimate expectations at the time of discharge; and (4) the circumstances of his discharge raise a reasonable inference of unlawful discrimination. Haulbrook v. Michelin N. Am., Inc., 252 F.3d 696, 702 (4th Cir.2001). If Defendant presents a legitimate, non-discriminatory reason for the adverse action, Plaintiff must show that the reason given is not the true reason but pretext for a discriminatory reason. Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 143 (2000)(citing Postal Service Bd. of Governors v. Aikens, 460 U.S. 711, 716 (1983)).

As set forth above, Plaintiff alleges that Defendants perceived him as having a disability, he was able to perform the functions of his job, and he was terminated despite that fact that he had no medical restrictions placed upon him. He further alleges that he complained of discrimination and suffered adverse action when he was not reinstated during the grievance process. These allegations are sufficient to allege causes of action for discrimination and retaliation in violation of the ADA. Thus, it is recommended that Defendants' Motion to Dismiss for failure to state a claim be denied.

**B.    Motion for Summary Judgment**

In the alternative, Defendants argue that summary judgment is proper because Plaintiff failed to timely file a Charge of Discrimination following his termination. To bring a lawsuit in United States District Court under the ADA, a plaintiff is first required to properly exhaust his or her administrative remedies. Specifically, a claimant must file a charge of discrimination with the EEOC within one hundred and eighty (180) days of the alleged discriminatory act or acts, or within three hundred (300) days from the alleged discriminatory act or acts if the claimant initially institutes proceedings with the appropriate state agency. See 42 U.S.C. § 2000e–5(e); 42 U.S.C. § 12117(a) [ADA adopts procedures set forth in § 2000e–5(e) ]. In South Carolina, the South Carolina Human Affairs Commission (SCHAC) is the appropriate state agency. However, Plaintiff did not file his

claim with the SCHAC, but directly with the EEOC. There appears to exist some split in authority as to whether a plaintiff who does not first file with a state or local agency must file with the EEOC within the first 180 days of the challenged action. Compare Middleton v. Motley Rice, LLC, No. 2:08-cv-3256-CWH-BM, 2010 WL 3167375, *11 n.7 (D.S.C. May 4, 2010) (Report and Recommendation) and Keeshan v. Eau Claire Co-op. Health Ctrs., Inc., No. 3:05-3601-MBS, 2007 WL 2903962, *4 n.2 (D.S.C. Oct. 2, 2007) with Adams v. U.S. Airways, Inc., No. 2:10-1658-RMG-BHH, 2011 WL 1326054, (D.S.C. March 16, 2011) (Report and Recommendation), aff.d, 2011 WL 1261451 (Apr. 5, 2011). This court need not determine which limitations period is appropriate for purposes of this motion, however, because the analysis is the same under either a 180-day limitations period or a 300-day limitations period.

The parties dispute the date upon which the limitations period began to run. Defendants assert that Plaintiff's termination was effective on February 26, 2010, the date of the revised letter notifying Plaintiff of his termination, and the limitations period is determined from that date.[3] Plaintiff argues that his employment was not terminated until October 18, 2010, when he was notified by J.D. Whitaker of his union, United Transportation Union (UTU), that his request for reinstatement had been denied. In support of his argument that he was still an employee of Defendants during the grievance process, Plaintiff attaches emails between J.D. Whitaker and Hoyt Watson.[4] See Emails (attached as an Exhibit to Plaintiff's Declaration). However, the emails do not

---

[3]Plaintiff argues that he received two different letters regarding termination and on both occasions was informed that he was to disregard the letters of termination because they were improper under the Union Agreement. However, the record reveals that Plaintiff received a termination letter on February 24, 2010, and another termination letter on February 26, 2010, asking Plaintiff to disregard the February 24th letter. The February 26th letter informs Plaintiff that is termination is effective as of that date. There is no other letter in the record informing Plaintiff to disregard the February 26th letter.

[4]It is not clear from the emails or elsewhere in the record who Hoyt Watson is.

indicate that Defendants considered Plaintiff an employee during the grievance process. In an email dated May 6, 2010, Hoyt Watson wrote to J.D. Whitaker,

> Good morning JD. I spoke with Dennis Tue. and he is thinking about taking a railroad job with another co. so he can make a check. He wanted you to know that even though he is working else where, he still wanted to keep his case going and was wondering if that was going to be a problem. He is mainly interested in getting his back pay and time back.
> Thanks Hoyt.

Email from Watson Dated May 6, 2010. Whitaker responded to Watson the same day:

> Brother Watson,
>
> There is nothing that would prohibit Brother Cain from working for another railroad while is [sic] in a dismissed status. However, if we are successful in winning his case he will most likely have to return to service (SCCR) in order to receive his lost earnings. Also if the railroad finds out he is working they may try to off set their liability (lost earnings) by requesting that they are held against his settlement.
>
> I hope this information address [sic] your concerns. Please feel free to contact me if you are in need of any additional assistance.
>
> Fraternally,
>
> John D. Whitaker III
> Vice General Chairman
> United Transportation Union

Email from Whitaker Dated May 6, 2010. These emails fail to support Plaintiff's argument. Contrary to Plaintiff's belief that he was still an employee of Defendants until his grievance was denied, Seil, Acting General Manager for SCRF, declares that "SCRF considers an employee's termination effective as of the date of termination. It is not SCRF's custom or practice to treat an employee's termination as contingent on Public Law Board action." Seil Decl. ¶ 9.

Additionally, the statute provides that the limitations period begins to run from the date of the alleged unlawful employment practice. Here, action was taken by Defendants on February 26, 2010, when they notified Plaintiff of his termination. The denial of Plaintiff's grievance on October

26, 2010, was determined by the Public Law Board, an outside agency, and thus, is not an unlawful employment practice attributable to Defendants.[5] In sum, Plaintiff has failed to present sufficient evidence that the effective date of his termination, the alleged discriminatory act about which he brings this action, was anything other than February 26, 2010. His own belief that his termination was not final until the date his grievance was denied, without more, is insufficient to create a genuine dispute of fact. Barber v. Hosp. Corp. of Am., 977 F.2d 872, 874-75 (4th Cir. 1992) (holding that the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment).

Also, pursuit of an internal remedy or grievance process does not toll the time period for filing a charge of discrimination. See Int'l Union of Elec. Workers v. Robbins & Myers, Inc., 429 U.S. 229, 239, 97 S. Ct. 441, 448-49 (1976) (holding that existence and utilization of grievance or arbitration procedures under a collective-bargaining contract does not toll running of limitations period); see also Del. State College v. Ricks, 449 U.S. 250, 260-62, 101 S. Ct. 498, 505-06 (1980) (dismissal of Title VII claim as untimely affirmed because "pendency of a grievance, or some other method of collateral review of an employment decision, does not toll the running of the limitations periods"); Mezu v. Morgan State Univ., 367 F. App'x 385, 388-89 (4th Cir. 2010) (date plaintiff denied promotion was date the period for filing charge began, not the date internal appeals process concluded); Price v. Litton Business Sys., Inc., 694 F.2d 963, 965 (4th Cir. 1982) (plaintiff's Title VII claim arose when told he was to be terminated, not when he actually left); see, e.g., Arias-Mieses

---

[5]Plaintiff appears to argue that the continuing violations doctrine applies here. In his Response, he cites law discussing the continuing violations doctrine, see National Railroad Passenger Corporation v. Morgan, 536 U.S. 101, 113-15, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002), but does not apply that law to the facts of this case. However, it is well held that termination is a discrete act of discrimination to which the continuing violations doctrine does not apply. Id. at 114 (identifying "termination, failure to promote, denial of transfer, [and] refusal to hire" as examples of discrete acts).

v. CSX Transp., Inc., 630 F. Supp. 2d 328, 332 (S.D.N.Y. 2009). Thus, to the extent Plaintiff argues that the time period for filing his Charge of Discrimination was tolled while he pursued the grievance process, his argument is without merit. Because the evidence reveals that the alleged unlawful employment practice about which Plaintiff complains, his termination, occurred on February 26, 2010, and Plaintiff filed his Charge of Discrimination outside either the 180-day or the 300-day limitations period, Plaintiff failed to properly exhaust his administrative remedies as to his ADA claims, and thus, summary judgment is appropriate.

## V.     CONCLUSION

For the reasons discussed above, it is recommended that Defendant's Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (Document # 7), be granted pursuant to Rule 56, Fed.R.Civ.P., and this case be dismissed in its entirety.

 s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

June 22, 2012
Florence, South Carolina

**The parties are directed to the important notice on the following page.**